Donald W. ELDRIDGE, Plaintiff,

v.

RICHFIELD OIL CORPORATION, a corporation, Defendant.

RICHFIELD OIL CORPORATION, a corporation, Third-Party Plaintiff,

v.

S. P. CARR and A. T. & L. Truck Lines, Third-Party Defendants.

S. P. CARR, Counter-Claimant,

v.

RICHFIELD OIL CORPORATION, a corporation, Counter-Defendant.

Civ. A. No. 64-1389-IH.

United States District Court
S. D. California,
Central Division.

Nov. 18, 1965.

Veatch, Thomas, Carlson & Dorsey, Chase, Rotchford, Downen & Drukker, Los Angeles, Cal., for defendant.

Garibaldi & Lane, Los Angeles, Cal., for intervenor.

Bolton, Groff & Dunne, Los Angeles, Cal., for defendant, S. P. Carr.

IRVING HILL, District Judge.

The Court must and does grant Defendant's Motion to Dismiss the instant action for lack of diversity. In so doing, I recognize that injustice may result, i. e. that Plaintiff may now be without a remedy for serious personal injuries. A brief summary of the facts which led to this unhappy result is in order.

It appears from the Complaint and the Pre-Trial Order that Plaintiff was an employee of a contract carrier engaged in hauling petroleum products in tank trucks. He alleges that on July 20, 1964, his employer was hired to carry a load of octane blending compound, a highly volatile substance, from the refinery of the Defendant, Richfield Oil Corp., at Wilmington, California, to another refinery at Bakersfield, California, and that Richfield undertook to load the compound on the truck and to close the loading apertures. He alleges that one of the apertures was negligently left unlatched by Richfield so that, while the truck was en route to its destination, the compound spilled over the truck body and, as a result of the spilling, caught fire and exploded. He claims serious burns on all parts of his body and permanent disability. Plaintiff is a citizen of California.

As aforesaid, the injury occurred on July 20, 1964. On October 8, 1964, Plaintiff filed his complaint in this Court naming the Defendant, Richfield, as the only defendant. The complaint alleges in paragraph 1 thereof that the Defendant, Richfield, is a Delaware corporation "having and maintaining its principal place of business in the City of Los Angeles, State of California." Defendant's answer filed October 29, 1964, fails to deny the allegations of paragraph 1, and thus is deemed to admit them. Defendant filed a third-party complaint for indemnity against Plaintiff's employer and Carr, the owner of the truck who had leased it to Plaintiff's employer. For months the case proceeded in the usual fashion. A Pre-Trial hearing, set for December 21, 1964, was continued on stipulation of the parties. Among the reasons given for the continuance was "to permit the parties time to exhaust the possibility of settlement."

A Pre-Trial Conference Order was finally filed on July 26, 1965, by which time the one-year period provided in the California statute of limitations for personal injury actions (C.C.P. Sec. 340 [3]) had expired. The Pre-Trial Order, signed by all parties, recites that the Defendant, Richfield, "has and does now maintain its principal office and place of business in the City of Los Angeles * * ". The case was set for trial on August 24, 1965.

On July 26, 1965, an informal settlement conference between the Court and counsel for all parties was held. Neither at that time nor at any previous time was there any contention or intimation by the Defendant that this Court lacked jurisdiction. The jurisdictional issue

was first raised by the Defendant at a further informal settlement conference with the Court on August 13, 1965, when Defendant's counsel stated that he had just noticed that there was no diversity. Defendant offers no other explanation of its failure to raise the jurisdictional problem at an earlier time.

Defendant filed a motion to dismiss the action for lack of jurisdiction on August 31, 1965. A similar motion was filed by Third-Party Defendant, Carr. These motions were heard on September 20, 1965.

In 1958, Congress added to Title 28, Sec. 1332, the basic statute defining diversity jurisdiction in the lower Federal Courts, a new subparagraph (c), for the apparent purpose of somewhat contracting the diversity jurisdiction in cases involving corporations.

The added sub-section (c) provides in relevant part as follows:

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business * * *".

At the informal conference August 13, 1965, counsel for Plaintiff informed the Court that he had not known of the enactment of sub-section (c) and had assumed that the previous rule permitting federal jurisdiction in cases between citizens of one state and corporations incorporated in another state, was still in effect.

Plaintiff resists the motions to dismiss on two alternative grounds. He challenges the constitutionality of 28 U.S.C. § 1332(c) and also offers a proposed amendment to his pleading which would put in issue the fact question of where the Defendant's principal place of business is.

Plaintiff's claim that the 1958 amendment is unconstitutional is two-pronged. He argues first that if a corporation is deemed to be a citizen of the state that incorporated it, litigation between it and a citizen of another state is litigation between "citizens of different states" within the meaning of Article III of the Constitution. Congress, he argues, has no power to divest the lower Federal Courts of jurisdiction of such cases.

The argument is not well founded. In the first place, it is clear that corporations have not been accorded the status of "citizens". The Supreme Court has held only that corporations are "deemed" to be the equivalent of citizens for the purposes of federal diversity jurisdiction.[1] Secondly, and more important, Congress has been held, since the earliest days of the United States, to have the power (1) to invest the inferior Federal Courts with all or any part of the federal judicial power;[2] and (2) to withdraw at any time all or part of the jurisdiction which it has conferred on them.[3]

Plaintiff's second constitutional argument proceeds thusly: Up to 1958 the Supreme Court had held that corporations were deemed to be citizens *only* of the state in which they were incorporat-

1. Louisville C & C Railroad Co. v. Letson, 2 How. 497, 11 L.Ed. 353 (1844); Marshall v. Baltimore & Ohio Railroad Co., 16 How. 314, 14 L.Ed. 953 (1853). See 1 Moore's, Federal Practice ¶ 0.76[5] and cases cited at Note 4; McGovney, "A Supreme Court Fiction: Corporations in the Diverse Citizenship Jurisdiction of the Federal Courts", 56 Harv.L.Rev. 1225, 1234 (1943).

2. Turner v. Bank of North America, 4 Dall. 8, 10, 1 L.Ed. 718 (1799); Cary v. Curtis, 3 How. 236, 11 L.Ed. 576 (1845); Sheldon v. Sill, 8 How. 441, 12 L.Ed. 1147

(1850); Kline v. Burke Construction Co., 260 U.S. 226, 233–234, 43 S.Ct. 79, 67 L. Ed. 226 (1922).

3. Harlan v. Pennsylvania Railroad Co., 180 F.Supp. 725 (W.D.Pa.1960); Anderson v. A. & W. Tractor Products, 181 F.Supp. 90 (D.Ill.1960). See Hearings on HR 2516 and HR 4497, Subcommittee No. 3, House Committee on the Judiciary, 85th Cong., 1st Sess. (1957) at p. 28; 104 Cong.Rec. 12686–12687, 85th Cong., 2d Sess. (1958); Note, 6 Utah L.Rev. 231, 239 (1958); 1 Moore's, Federal Practice ¶ 0.77 [1.–3.].

ed. This rule of decision had, by 1958, become the "supreme law of the land", and had been engrafted into the Constitution. Congress, Plaintiff reasons, was thus without power to modify it by the 1958 addition of sub-paragraph (c), deeming a corporation also to be a citizen of the state in which is located its principal place of business. Sub-paragraph (c) is challenged as unconstitutional under both the due process clause and Article III.

█ It seems clear, as previously stated, that the pre-1958 decisions were not interpretations of the constitutional term, "citizens", but were rather holdings to the effect that a corporation would be treated as a citizen for the limited purpose of diversity jurisdiction. If it be conceded, as it must, that Congress has the power to define, confer, limit and take away the jurisdiction of the lower Federal Courts, *a fortiori* it has the power to change a judge-made rule defining the status of corporations for jurisdictional purposes.

Constitutional attacks on the 1958 amendment, similar to Plaintiff's here, have been overruled by other District Courts.[4] In each of these cases a request for a three-judge court has been denied on the grounds that the constitutional question is unsubstantial. I will follow these authorities in the instant case and I find Title 28 U.S.C. § 1332(c) to be a constitutional exercise of Congressional power.

I now pass to the fact question. But first, a brief statement about the procedural context in which it arises for decision. Plaintiff's Motion to Amend the Complaint so as to raise the fact question of where Richfield's principal place of business is, was denied by the Court's Order of September 24, 1965. It was denied on the ground that the proposed amendment was defective in form since it failed to set out the simple jurisdictional allegation envisioned by 28 U.S.C. § 1332 and consisted instead of a rambling statement, over three pages in length, containing much evidentiary detail and legal argument. However, Plaintiff did not suffer by this denial of leave to amend. The Court recited in its Order that it deemed Richfield's Motion to Dismiss to have raised the same issue of fact. In its Order of September 24, 1965, the Court also gave Plaintiff additional time to set forth in affidavit form any facts which would show that Richfield's principal place of business was in a state other than California. This, in effect, was a rulling that Plaintiff was not bound by his having pleaded that the Defendant's principal place of business was in California and could contest the issue on the merits.

█ It seems clear that this question, as one essential to jurisdiction, may be decided by the Court on motion without formal trial, even where a jury trial has been demanded.[5] It is likewise well established that, as in the case of other motions, the question may be decided on affidavits alone.[6] So, we pass now to the merits of the question.

The cases are in some conflict in discussing the factors or criteria which are used to determine where a corporation's principal place of business is. Some attempt to fix it by determining the "nerve center" or "center of gravity" of the corporation, others by determining the prin-

4. Harlan v. Pennsylvania Railroad Co., and Anderson v. A. & W. Tractor Products, supra, Note 3.

5. Williams v. Minnesota Mining & Manufacturing Co., 14 F.R.D. 1 (S.D.Cal. 1953); North Pac. S.S. Co. v. Soley, 257 U.S. 216, 42 S.Ct. 87, 66 L.Ed. 203 (1921); Gilbert v. David, 235 U.S. 561, 566–568, 35 S.Ct. 164, 59 L.Ed. 360 (1915); Wetmore v. Rymer, 169 U.S. 115, 120, 18 S.Ct. 293, 42 L.Ed. 682

(1898); Taylor v. Hubbell, 188 F.2d 106, 109 (9th Cir. 1951) cert. denied, 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618 (1951).

6. Williams v. Minnesota Mining & Manufacturing Co., supra, Note 5; KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S. Ct. 197, 81 L.Ed. 183 (1936); Gibbs v. Buck, 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); Land v. Dollar, 330 U.S. 731, 735, note 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

cipal location of the corporation's actual activities and operations. See the discussion at 1 Moore's, Federal Practice ¶¶ 0.77[3.–1] – [3.–4].

■■ In the instant case, by any test, the result is clear; the question is not even close. Defendant's affidavits show that Richfield has its executive offices in Los Angeles, that all officers but one reside in California, that 90% of the entire corporate personnel are located in California, that 60% of all sales are made in California, that all of the processing and refining facilities and most of the plant and equipment of the corporation are located in California. To counter this, Plaintiff offers only the Certificate of Incorporation of Richfield, executed in 1936, which fixes Wilmington, Delaware, as the "principal office or place of business" in Delaware, and an undated form filled out by Richfield in qualifying as a foreign corporation in California, which lists an address in Delaware as its "principal business office".

I find that the Defendant's principal place of business, within the meaning of 28 U.S.C. § 1332(c), is in California. This holding requires dismissal of the action. When subject-matter jurisdiction is lacking, it cannot be conferred or supplied by consent of both parties or by estoppel, laches, or waiver of either party.[7]

■ Plaintiff's counsel has informed the Court that there is no stand-by state court action pending in this case. Thus, his only apparent remedy will be an attempt to persuade the state courts that the one-year statute of limitations should be tolled while the action was pending in this court. The public policy of California favors preservation of actions which were filed in the wrong court for lack of subject-matter jurisdiction. This public policy is clearly manifested in C.C.P. Sec. 396.[8] A holding by the state court that the statute is tolled under the circumstances of the instant case, would not appear to conflict with the purposes

7. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17–18, 71 S.Ct. 534, 95 L.Ed. 702 (1951); Page v. Wright, 116 F.2d 449, 453 (7th Cir. 1940).

8. C.C.P. Sec. 396 provides that if an action is commenced in a court which lacks jurisdiction of the subject matter, it shall not be dismissed if there is a court which has jurisdiction but shall instead be "transferred" to the latter court. It might be argued that under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), this Court should undertake to act under that statute and attempt a transfer of the instant case to the Superior Court. I have in mind particularly the Supreme Court's statement in Guaranty that where jurisdiction is based solely on diversity and where application of a state-created right is concerned, the federal court is "only another court of a State", 326 U.S. at 108, 65 S.Ct. at 1469, and that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." 326 U.S. at 109, 65 S.Ct. at 1470. C.C.P. Sec. 396 could be

viewed as defining a right of the Plaintiff, i.e. a right not to lose a potential recovery because of a jurisdictional error in choosing the court in which the action is filed. Thus transfer by the federal court would be initiated, not because the State statute itself directs a federal court to act, but because Erie and its progeny impel the federal court to act, and to act just as a State court would act. Whether the transferee State court would accept the transfer would be a matter for it to decide. My brother, Mathes, considered this possibility in Smith v. Sperling, 117 F.Supp. 781, 811 (S.D.Cal.1953), and rejected it because there is no machinery for transfer between state and federal courts. He also expressed doubt that C.C.P. Sec. 396 applied to a federal court by its literal terms. However, Smith was decided without apparent reference to the effect of Erie and Guaranty. After much consideration I have reached the same result as was reached in Smith. To attempt to transfer the case to the State court would raise difficult and delicate questions concerning the relationship of state and federal courts under our scheme of government, and, in my view, should not be attempted by a district court in the absence of controlling precedent or direction from higher authority.

of the state statute of limitations. Plaintiff would not be seeking to assert a stale claim. On the contrary, Defendant has had notice of the claim since a time three months after the injury and has had opportunity to prepare its defense through discovery in the Federal Court action. Defendant would not be surprised and would encounter no difficulty in assembling and presenting its evidence in the state court action. Conversely, Plaintiff has not delayed in pressing his claim. But these, of course, are matters for determination by the state court.

The motion of Defendant, Richfield, to dismiss the action is granted. This makes moot the motion for dismissal filed by Third-Party Defendant Carr; when the main action falls, the cross-action for indemnity likewise falls. The dismissal does not constitute an adjudication on the merits, since it is a dismissal for lack of jurisdiction. See Federal Civil Rule 41(b). Each party will bear its own costs.